## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

PROMONTORY INTERFINANCIAL
NETWORK, LLC,

       Plaintiff,

v.

ANOVA FINANCIAL CORPORATION,

       Defendant.

Case No. 2:13-cv-00243-MSD-DEM

PUBLIC VERSION

## PROMONTORY INTERFINANCIAL NETWORK, LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF NONINFRINGEMENT AND VALIDITY

This case arose when Anova Financial Corporation's ("Anova") made baseless accusations that Promontory Interfinancial Network, LLC ("Promontory") was infringing Anova's patents. (Complaint [Dkt. No. 1] at ¶¶ 9-12). Anova made the accusations in an effort to coerce Promontory into acquiring Anova's business. (*Id.* at ¶ 10). In response to Anova's accusations, Promontory filed its complaint for a declaratory judgment of noninfringement of Anova's patents,[1] and infringement of Promontory's patents.[2]

In response, Anova maintained its earlier accusations and filed a counterclaim alleging infringement of the Anova Patents, as well as counterclaims for invalidity of the Promontory Patents. Now, however, mere weeks before the close of discovery, Anova has still not presented and cannot present any evidence to support its claims. Instead, Anova has stiff-armed Promontory's straightforward discovery requests seeking the basis of its claims and then—when the time came to provide expert disclosures in support of its claims—provided nothing.

---

[1] U.S. Patent Nos. 7,895,099 (the "'099 patent"); 8,090,651 (the "'651 patent"); 8,301,560 (the "'560 patent"); and 7,904,372 (the "'372 patent") (collectively, the "Anova Patents").

[2] U.S. Patent Nos. 7,596,522 (the "'522 patent), 7,603,307 (the "'307 patent"), 7,899,745 (the "'745 patent"), 7,899,746 (the "'746 patent"), 7,899,747 (the "'747 patent"), 7,921,057 (the "'057 patent"), 8,036,986 (the "'986 patent"), 8,051,004 (the "'004 patent"), and 8,051,005 (the "'005 patent") (collectively, the "Promontory Patents").

As has become increasingly apparent in the course of this litigation, Anova did not previously have and does not now have any basis for its claims of infringement by Promontory of the Anova Patents or its claims of invalidity of the Promontory Patents. For the reasons discussed below, Promontory is entitled to partial summary judgment that (1) the Anova Patents are not infringed and (2) the Promontory Patents are not invalid.

## I. STATEMENT OF MATERIAL FACTS NOT SUBJECT TO GENUINE DISPUTE

The following facts are not subject to dispute, and they make the issues of noninfringement of the Anova Patents and validity of the Promontory Patents ripe for summary judgment disposition:

1.  Promontory filed a complaint against Anova seeking, *inter alia*, declaratory judgment that Promontory does not infringe the Anova Patents and judgment that Anova infringes the Promontory Patents. (Complaint [Dkt. No. 1] at ¶¶ 30-34, 40-44, 50-54, 60-64, 70-123).

### A. Anova's Infringement Allegations

2.  In its Answer and Counterclaims, Anova alleged that Promontory was liable for infringement of the Anova Patents by reason of "making, using, offering for sale, and selling in the United States methods, computer programs and/or systems for facilitating financial transactions, including but not limited to transactions involving Promontory's ICS® and IND® services" and by Promontory "inducing others to use, offer for sale and/or sell in the United States methods, computer programs and/or systems for facilitating financial transactions [], including but not limited to transactions involving Promontory's ICS® and IND® services." (Answer and Counterclaims [Dkt. No. 20] at ¶¶ 26-27, 33-34, 40-41, 47-48 (of Counterclaims)).

3.  Promontory offers several services (not just ICS and IND) that could be described as "methods, computer programs and/or systems for facilitating financial transactions." Anova's allegation in its Counterclaims did not limit the scope of its infringement allegations.

2

4.      Promontory's Interrogatory No. 1, served with its First Set of Interrogatories on July 29, 2013, sought from Anova its contentions regarding which claims of which Anova patents-in-suit allegedly were infringed and which Promontory services it accused of infringing those claims. (Declaration of Sharon A. Israel ("Israel Decl."), Ex. 1 at 5). Interrogatory No. 1 also sought Anova's contention regarding how the accused Promontory services met each limitation of the asserted claims. (*Id.*).

### 1.      Scope of Anova's Infringement Claims

5.      In its original response dated September 10, 2013, Anova responded that it "contends that Promontory's ICS® and IND® services infringe at least Claim 1 of [the '099 patent], Claim 1 of [the '372 patent], Claim 7 of [the '651 patent], and Claim 7 of [the '560 patent]." (Israel Decl., Ex. 2 at 6).

6.      In its October 15, 2013, supplemental interrogatory responses, Anova identified



(Israel Decl., Ex. 3 at 7).  Anova did not, in its supplemental responses, disclose any claims it ███████████████████████████████████ (*See id.*).

7.      On February 11, 2014, Promontory took the deposition of Anova's Rule 30(b)(6) witness, Anova's CEO Kim Winslow.  When asked whether Anova accused IND of infringing,



(*Id.* at 212:22-213:8).

8.    On March 6, 2014, the deadline for providing expert disclosures under Federal Rule of Civil Procedure 26(a)(2), (Agreed Order Granting Joint Mot. to Amend Scheduling Order [Dkt. No. 80] at 1), Anova served the report of Ms. Ambreen Salters, which addressed ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Israel Decl., Ex. 5 at ¶ 36).  Ms. Salters' report did not address any other Promontory services.  (*See generally id.*).

9.    Anova did not provide any disclosures under Rule 26(a)(2) on the issues raised by Anova of infringement of the Anova Patents or invalidity of the Promontory Patents.  This was confirmed in an email dated March 7, 2014, by counsel for Anova, explaining that the expert report of Ms. Ambreen Salters is the only "opening expert report that we intend to rely upon at this time." (Israel Decl., Ex. 6).

### 2.    Nondisclosure of Anova's Infringement Theory

10.    In its September 10, 2013, response to Promontory's Interrogatory No. 1, Anova did not identify where in each accused service it contended the limitations of the asserted claims could be found.  (Israel Decl., Ex. 2 at 5-6).  Anova promised, however, to "provide claim charts identifying where each limitation of the foregoing claims is found in the ICS® and IND® services *promptly following receipt of core technical documents* or other information from

Promontory relating to the structure, function and operation of such services." (*Id.* at 5 (emphasis added)).

11.     Promontory produced core technical documents including program agreements and other documents setting forth the structure, function, and operation of the ICS and IND services on September 30, 2013. (*See* Israel Decl., Ex. 10 at 10-11 (responding that the execution of a complete transaction involving identified Promontory services could be derived from Bates range PROM00014587-PROM00014983); *id.*, Ex. 25 (showing "documents Bates numbered PROM00000001 through PROM00014991" were produced on September 30, 2013)).

12.     In its October 15, 2013, supplemental interrogatory responses, Anova did not identify where it contended each limitation of the asserted claims was found in any accused services. (Israel Decl., Ex. 3 at 6-7). To date, Anova still has not done so.

13.     Promontory substantially completed its production of documents on February 21, 2014. (Israel Decl., Ex. 7). To date, Promontory has produced over 280,000 pages of documents, including many technical documents.

14.     In addition, pursuant to a Rule 30(b)(6) deposition notice to Promontory, including the topic of "The creation, launch, development, structure and operation of the Promontory Services and the systems used for providing the Promontory Services," Anova took the deposition of Promontory's Senior Vice President Robert Hyland on February 21, 2014, nearly two weeks before the deadline for opening expert reports. (Israel Decl., Ex. 8). In fact, the parties jointly moved to have the expert report deadlines extended so that Anova would be able to take the Rule 30(b)(6) deposition of Promontory well in advance of the opening expert report deadline. (Israel Decl., Ex. 9 at 4).

15.     The ICS source code defines the functionality of Promontory's ICS system. (Declaration of Andrew Wolfe, Ph.D. ("Wolfe Decl.") ¶¶ 17-19). Anova has had the opportunity to request inspection of Promontory's source code since the Protective Order was entered on January 3, 2014. (Protective Order [Dkt. No. 57] § 8.2). In addition, Promontory specifically offered to make source code available for inspection to demonstrate to Anova the operation of

ICS.  (Israel Decl., Ex. 10, Promontory's First Supplemental Response to Anova's First Set of Interrogatories at 11).  Anova has not requested to inspect Promontory's source code for ICS or any other Promontory service.

**B.   Anova's "Invalidity" Allegations**

16.    In its Answer and Counterclaims, Anova also alleged invalidity of each claim of the Promontory Patents on the basis of "failing to satisfy one or more requirements for patentability of Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103 and/or 112."  (Answer and Counterclaims [Dkt. No. 20] at 35-45).

17.    In response to an interrogatory from Promontory on Anova's allegations of invalidity,



(*See id.* at 11-12 (Anova's First Supplemental Response to Interrogatory No. 4)).

18.     Since October 15, 2013, when Anova served its first supplemental response, Anova has not provided any additional information on its invalidity theories and it failed to submit any expert disclosures directed to the issue of invalidity.

19.     When asked about Anova's contentions relating to some of the identified prior art, Anova's Rule 30(b)(6) deponent ▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐ ▐▐▐▐▐▐▐ (*See* Israel Decl., Ex. 4 at 138:3-20).

20.     ▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐

(*Id.*).

21.     Each of the Promontory Patents is a continuation of U.S. Patent Application No. 12/120,944, which is a continuation of the '128 application, which was filed on January 17, 2003. (Israel Decl., Exs. 12-20 (the Promontory Patents) at cover pages). All of the Promontory Patents claim priority back to the '128 application.[3] (Israel Decl., Exs. 12, 13 at col. 1:7-14; Exs. 14, 15 at col. 1:11-17; Ex. 16 at col. 1:14-21; Exs. 17, 18, 20 at col. 1:12-19; Ex. 19 at col. 1:10-17). And all of the Promontory Patents share a common specification with the '128 application. (Declaration of Richard T. Powers ("Powers Decl.") ¶ 14).

22.     

---

[3] The Promontory Patents also claim priority to earlier-filed applications and provisional applications, and at least some claims are entitled to those earlier priority dates.

23. 

**C.     Anova's Failure to Provide An Expert Report on Infringement or Invalidity**

24.     March 6, 2014, was the date on which the parties were required to provide expert disclosures for issues on which they bear the burden on proof. (Agreed Order Granting Joint Mot. to Amend Scheduling Order [Dkt. No. 80] at 1). As noted above, Anova confirmed that Ms. Salters' report is the only report on which Anova intends to rely, as of the deadline to provide such reports. Ms. Salters' report did not address whether ICS (or any other Promontory service) infringed the Anova Patents. (*See generally* Israel Decl., Ex. 5). Ms. Salters' report also did not address the validity of the claims of the Promontory Patents. (*See generally id.*). Anova did not serve any expert reports on the issues of Promontory's alleged infringement of the Anova Patents or of the alleged invalidity of the Promontory Patents.

**D.     Operation of ICS**

25.     Promontory's ICS service is a reciprocal deposit placement service provided by Promontory to various depository institutions. In ICS, all deposits are held in ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In contrast to time deposit accounts, like certificates of deposit ("CDs"), which have maturities, the ▮▮▮▮▮▮ used in ICS are non-time, non-maturity deposit accounts. (*Id.* ¶ 22).

26.     ICS allocates reciprocal deposits without the need for determining whether or not the interest rates for the different deposits match. (*Id.* ¶ 30). This is because ICS utilizes ▮▮▮ ▮▮▮▮▮▮ which is part of the Jacobsen invention disclosed in the Promontory Patents. (*Id.* ¶ 29).

27.   The ███████████ concept works as follows: ███████████



██ ██ Because of this, ICS does not match or attempt to match interest rates that are offered to depositors of different relationship banks. (*Id.*).

28.   The ICS system provides for certain communications on behalf of relationship banks with depositors through a web interface called the Depositor Control Panel. (*Id.* ¶¶ 38-39; Wolfe Decl. ¶ 30). The Depositor Control Panel informs depositors of the amount of their own funds (both principal and accrued interest) on deposit with each of the depository institutions holding their funds, but those are the only amounts the Depositor Control Panel communicates to the depositors. (Powers Decl. ¶¶ 39-40). The Depositor Control Panel also provides identifying information about the depository institutions holding a depositor's deposits (such as name and location). (*Id.* ¶ 39). In addition, it permits the depositor to view a list of institutions with which its deposits might be placed and to review and reject destination banks at which its deposits are proposed to be placed. (*Id.*).

29.   The ICS system provides for emails to be sent on behalf of relationship banks to depositors with various alerts relating to the depositors' accounts. (Wolfe Decl. ¶¶ 32-34). These emails contain no deposit amounts. (*See id.* (describing code for providing emails)).

30.   The Depositor Control Panel and the emails with depositor alerts are the only means by which the ICS system communicates with depositors that have deposits placed using the service. (*Id.* ¶¶ 29-34; Powers Decl. ¶¶ 39-40).

## II.     LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate where no genuine issue exists as to any material fact and where the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  In determining whether to grant summary judgment, the court will review the facts and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).  A party opposing a properly supported motion for summary judgment must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Mere allegations in the pleadings or conclusory statements in affidavits are insufficient to overcome a properly supported summary judgment motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  On issues for which the nonmoving party bears the burden of proof, the moving party may show the absence of a genuine issue of material fact "by pointing out to the district court," even without producing evidence, "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  These rules apply to motions for partial summary judgment as well. Fed. R. Civ. P. 56(a).

Although Promontory brought claims for declaratory judgment of noninfringement, Anova still bears the burden of proving alleged infringement. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 849 (2014).  Under 35 U.S.C. § 282, patents are presumed valid, and the party asserting invalidity of a patent bears the burden of proving that claim by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011).  The presumption mandated by Section 282 is applicable to all of the many bases for challenging a patent's validity. *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1570 (Fed. Cir. 1987).

The Federal Circuit, the law of which is controlling in this case, has repeatedly acknowledged the efficiency of summary judgment in patent cases where, as here, "wasteful utilization of the jury process and judicial resources" may be avoided by disposing of an issue as a matter of law. *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831,

835 (Fed. Cir. 1984); *see also Mark I Marketing Corp. v. R.R. Donnelley & Sons Co.,* 66 F.3d 285, 289 (Fed. Cir. 1995) (summary judgment is appropriate in a patent case); *Lockwood v. American Airlines, Inc.,* 107 F.3d 1565, 1572 (Fed. Cir. 1997). And the Supreme Court has admonished the lower courts that summary judgment is "an integral part of the Federal Rules." *Celotex Corp.,* 477 U.S. at 327. The Court has emphasized that Rule 56 should be "construed with due regard ... for the rights of persons opposing ... claims and defenses" that - like Anova's here -"have no factual basis." *Id.* This is a case in which summary judgment is not just appropriate; it is necessary.

## III.   SUMMARY JUDGMENT IS WARRANTED AGAINST ANOVA

Promontory brought its claims for declaratory judgment of noninfringement to end Anova's attempts to coerce Promontory into buying Anova with unfounded accusations of infringement. Through the ensuing eleven months of litigation, Anova has asserted and maintained its counterclaims for infringement and invalidity without once putting forth an explanation of its theories, let alone any evidence to support them. In fact, if Anova had performed proper due diligence before filing its counterclaims, it would have known that it could not have met its burden, because it would have seen that the Promontory services do not practice the Anova Patents.

As set forth above, Anova alleged in its Answer and Counterclaims that Promontory was liable for infringement of the Anova Patents by Promontory through Promontory's "methods, computer programs and/or systems for facilitating financial transactions, including but not limited to transactions involving Promontory's ICS® and IND® services." (Answer and Counterclaims [Dkt. No. 20] at ¶¶ 26-27, 33-34, 40-41, 47-48 (of Counterclaims)). Now, however, as also set forth above, Anova has apparently chosen not even to pursue its infringement claims against Promontory services other than ICS. And as discussed further below, Anova has not presented and cannot present evidence from which a fact finder could conclude that Anova had met its burden to show that ICS infringes or that the Promontory Patents are

invalid. Accordingly, the Court should grant summary judgment dismissing Anova's infringement and invalidity counterclaims in their entirety, with respect to all Promontory services and all the Promontory Patents.

Multiple independent grounds support granting summary judgment:

First, Anova, having the burden of proof, has failed even to identify any evidence that would potentially establish that ICS (or any other Promontory service) practices all the elements of any of the claims of the Anova Patents or that the Promontory Patents are invalid. Without such evidence, there is nothing for Promontory to dispute. It is therefore entitled to judgment as a matter of law.

Second, Anova, having the burden of proof, cannot meet that burden because it has failed to provide any expert testimony to support its claims of infringement or invalidity. The technology at issue in this case, which includes financial services implemented through software, corresponding to source code executed by a computer, is outside the experience of a layperson and therefore requires expert explanation. Anova's failure to provide the requisite expert disclosure means that it cannot present the expert testimony that would be essential for it to prove its case. *See* Fed. R. Civ. P. 37(c)(1).

Third, even if Anova were allowed to try to prove its infringement case without expert testimony, Anova would be unable to do so, because the undisputed facts show that the ICS service does not practice all the elements of any claim of the Anova patents. Although the burden is not on Promontory to prove noninfringement, Promontory shows below that Promontory in fact does not infringe.

When a party, like Anova here, cannot prove its case, the Court not only can but should grant summary judgment to prevent the wasteful exercise of a trial on issues that the party has no chance of proving and that only serves to impose cost and burden on the other party and the judicial system. Indeed, as the Supreme Court has stated, in such a case "Rule 56(c) ***mandates*** the entry of summary judgment." *Celotex Corp.*, 477 U.S. at 322 (emphasis added) (now Rule 56(a)).

A.   **Anova Has Identified No Evidence Showing Promontory Infringes or That The Promontory Patents Are Invalid.**

Despite Promontory's diligent attempts during discovery, Anova has yet to provide any support for its allegations of infringement and invalidity.   Disposing of such "factually unsupported claims" is "[o]ne of the principal purposes of the summary judgment rule." *Id.* at 323-24.

At no point in this litigation has Anova accused any Promontory service other than IND and ICS of infringing any claim of the Anova Patents.  As also set forth above, ████████████ ████████████████, damages expert report, and ████████████████ have made it clear that Anova no longer is accusing the IND service of infringement.  As Anova has been unable to even articulate what claims are allegedly infringed by Promontory's services other than ICS, summary judgment of non-infringement should be granted with respect to Promontory's non-ICS services.

With respect to ICS, Anova has done no more than identify certain claims of the Anova Patents that are allegedly infringed.  As set forth above, Anova has failed to articulate any theory as to why ICS infringes, and has not provided promised claim charts in response to Promontory's interrogatory on Anova's infringement allegations.  Moreover, Anova has failed to provide any expert report on the topic of infringement, and its ████████████████████████████████ ████████████████████████████.  Thus, eleven months into this case, Anova has utterly failed to articulate any theory or present any evidence as to why even a single claim of the Anova Patents is allegedly infringed by ICS.  For at least this reason summary judgment of non-infringement should be granted with respect to ICS.

Similarly, Anova has failed to articulate any theories as to why any claim of any of the Promontory Patents is invalid.  As set forth above, Anova has provided nothing other than a list of references, none of which are even prior art to Promontory's patents (as shown below), and mere categories of alleged prior art.  Furthermore, Anova has also declined to provide an expert

report on any alleged invalidity challenges to Promontory's patents. For at least these reasons summary judgment of validity of the Promontory Patents should be granted.

**B.    Expert Testimony Is Required to Show Infringement of the Anova Patents and Invalidity of the Promontory Patents.**

Anova cannot succeed in proving its claims without expert testimony. The technology at issue is sufficiently complex that "relevant expert testimony regarding matters beyond the comprehension of laypersons is . . . essential." *Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1369 (Fed. Cir. 2004).

For infringement, Anova cannot meet its burden without presenting expert testimony explaining how ICS works and applying the claims to ICS. The operation of the ICS system is governed by software, the operation of which is described by the source code. (Wolfe Decl. ¶¶ 17-19). The agreements between Promontory and the various financial institutions in the Promontory Network are also necessary to understanding how ICS operates. (Powers Decl. ¶ 16). Both the interpretation of source code and the significance of financial terms of art in Promontory's agreements and procedure manuals are "beyond the comprehension of laypersons" and require explanation by an expert witness. And Anova's corporate representative testified that determining whether a product or service fit within the claims of the Anova Patents was beyond even his expertise. (Israel Decl., Ex. 4 at 126:19-24). Similarly, for invalidity, the complexity of the technology at issue means Anova cannot meet its burden without presenting expert testimony "for example, to establish the existence of certain features in the prior art . . . or the existence (or lack thereof) of a motivation to combine references." *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1240 n.5 (Fed. Cir. 2010) (citations omitted).

The claims in both the Anova Patents and the Promontory Patents relate to systems, methods, or computer program products for use in providing financial services that involve

transactions between and among different financial institutions facilitated by the service provider. In a case involving claims directed to another system for financial transactions, the Federal Circuit held that applying prior art to claims directed to "a system for activating multifunction cards [such as pre-paid phone cards and electronic gift cards] using a point-of-sale ("POS") terminal, such as a cash register or a freestanding credit card reader" required expert testimony. *Alexsam, Inc. v. IDT Corp.*, 715 F.3d 1336, 1339, 1347-48 (Fed. Cir. 2013). The patent claims and accused ICS service at issue in this case bear much greater similarity to the system for exchanging transactional information in *Alexsam* than to the technologies at issue in cases where expert testimony has been found unnecessary, none of which involved source code. *Compare id.* *with, e.g., Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1374 (Fed. Cir. 2012) (holding prior art consisting of a "3-Cup French Press" did not require expert explanation); *Wyers*, 616 F.3d at 1233, 1242 (expert testimony not required where patent covered "hitch pin locks that secure trailers to cars and sport utility vehicles"); *Prima Tek II, L.L.C. v. Polypap S.A.R.L.*, 412 F.3d 1284, 1286, 1290 n.7 (Fed. Cir. 2005) (expert testimony not required where claims directed to "an assembly and method for displaying a floral grouping").

In cases such as this one, where expert testimony is required and not provided by the party with the burden of proof, that party cannot prove its case. Since Anova cannot prove its case, summary judgment is required. *Celotex Corp.*, 477 U.S. at 322. This protects the rights of defendants, like Promontory, that are subjected to baseless claims by preventing "factually insufficient claims . . . from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327; *see also Avia Group Int'l, Inc., v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1561 (Fed. Cir. 1988) (rejecting arguments that summary judgment "deprived" patent owner of trial where patent owner failed "to put in sufficient evidence to create a triable

15

issue of any material fact"), *abrogated on other grounds by Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 671, 678 (Fed. Cir. 2008) (en banc).  Thus, in *Campbell v. United States*, the Fourth Circuit affirmed summary judgment against plaintiff based on her inability to present expert testimony on elements of her cause of action.  470 Fed. App'x. 153, 157-58 (4th Cir. 2012).  Similarly here, expert testimony is essential to prove infringement or invalidity, and its absence warrants a summary judgment against Anova on the claims for which it bears the burden of proof.  *See also Centricut, LLC*, 390 F.3d at 1370 (holding that the patent owner could not carry its burden on infringement without expert testimony).

## C.  Promontory's ICS Service Does Not Infringe Because It Does Not Meet Each Limitation of the Asserted Claims.

Anova's failure to provide any theory or evidence of infringement, and its inability to prove infringement through expert testimony, are both justifications enough for granting summary judgment to Promontory.  Because it is Anova's burden to prove infringement, Promontory is entitled to summary judgment even without presenting evidence of noninfringement.  Nevertheless, Promontory is entitled to summary judgment for the independent reason that, as shown by the evidence, including the concurrently filed expert declarations of Rich Powers and Dr. Andrew Wolfe and exhibits thereto, at least one element from every claim of the Anova Patents is absent from ICS.

Nor are these few claim limitations the only ones that are absent from its ICS service.  For example, Promontory's ICS service does not infringe the '099 and '372 patents because all the claims of those patents require "aggregating funds of multiple investors prior to depositing them in order to create a more stable funds source."  (Markman Order [Dkt. No. 66] at 37-38 n.12 (underlining in original)).  ICS does not aggregate funds, either prior to or after depositing the funds in banks.  Furthermore, ICS does not infringe the '651 and '560 patents because the claims of those patents all require an "exchange" of funds, meaning that funds are transferred away from one bank to another, such as by ACH or Fedwire.  (*See* Israel Decl., Ex. 21 at 6:8-22,

16

16:14-43). The ICS service does not perform such an exchange of funds. 

 Promontory will provide expert disclosures supporting its non-infringement arguments relating to these and many other missing limitations at the time for such disclosures on topics for which the party does not bear the burden of proof.

Moreover, as explained in Promontory's March 6, 2014, expert disclosures, Promontory has been using the same procedures that it uses in ICS in its CDARS® service since long before the Anova Patents were filed. Thus, any theory Anova might put forward that ICS fits within the scope of the claims renders those claims invalid over CDARS.

      **1.**    **Promontory's ICS Service Does Not Infringe the '651 Patent or the '560 Patent For at Least the Reason That It Does Not "Exchange Deposits" by Matching Requirements that Include a "Maturity."**

All of the asserted claims of the '651 patent and the '560 patent require an "exchange" performed "in response to determining that the first set of requirements matches the second set of requirements." (Israel Decl., Ex. 21 at claims 1, 7, 30; *Id.*, Ex. 22 at claims 1, 7, 30; *see* Powers Decl. ¶ 20). The claims also require that the first and second sets of requirements are defined, respectively, by first and second requests from first and second banks. (Israel Decl., Ex. 21 at claims 1, 7, 30; *Id.*, Ex. 22 at claims 1, 7, 30; *see* Powers Decl. ¶ 20). Also, all of the claims require that "each of the first and second sets of requirements includes a maturity and an interest rate." (Israel Decl., Ex. 21 at claims 1, 7, 30; *Id.*, Ex. 22 at claims 1, 7, 30; *see* Powers Decl. ¶ 19).

ICS does not—and cannot—infringe any of these claims because the deposit accounts involved in ICS have no maturity at all. (Powers Decl. ¶ 23). As Mr. Powers explains, the plain and ordinary meaning of "maturity" to a person of ordinary skill in the art is "a date on or after

which the deposit may be withdrawn without penalty (or a period of time between deposit and that date)." (*Id.* ¶¶ 21-22). In ICS, all deposits are held in ███████████, which are non-time, non-maturity deposit accounts. (*Id.* ¶¶ 23-24; *id.*, Ex. 4). Indeed, Anova's own documents demonstrate that it has been well aware since well before this litigation that ICS includes only deposits without maturities. (*Id.* ¶ 25 (discussing Powers Decl., Ex. 5)).

Since the accounts involved in ICS have no maturity, ICS does not receive requests from banks "defining a first (or second) set of requirements" wherein "each of the first and second set of requirements includes a maturity," as required by all of the claims of the '560 and '651 patents. ICS does not store or utilize any maturity information about deposits being processed by the system at any point. (*Id.* ¶¶ 26-27 (relying, in part, on Wolfe Decl.)). ICS therefore cannot possibly "determin[e]" that the two sets of requirements including maturities "match" or "perform[] an exchange" in response to such a determination, both of which are also requirements of the claims. (*Id.* ¶ 27).

ICS also never "determin[es]" whether two sets of requirements "match . . . wherein the first and second sets of requirements includes . . . an interest rate." Rather than matching interest rates, ███████████████████████████████████████████████████████████████████, as in CDARS. (*Id.* ¶¶ 29-31). Each bank thus █████████████████████████████████████ ███████████████ (*Id.* ¶ 32). Because of ███████████████, deposits are allocated without ever determining, or having any need to determine, whether interest rates match. (*Id.* ¶¶ 32-33).

Because both of these requirements appear in every independent claim of the '651 patent and the '560 patent, and because Promontory's ICS service does not fall within either of them, ICS cannot infringe any claim of those patents. Therefore, even if Anova had offered any

infringement theory or expert testimony, Promontory would still be entitled to summary judgment of noninfringement of the '651 and '560 patents.

> **2.     Promontory's ICS Service Does Not Infringe the '099 Patent or the '372 Patent For at Least the Reason That It Does Not "Communicate" to Depositors "the Amount of Money Collectively Needed" By the Commercial Banks.**

All of the asserted claims of the '099 patent and the '372 patent require "communicating" the amount of money collectively needed by the plurality of different commercial banks (that is, the banks that receive placed funds) to the plurality of depositor groups. (Powers Decl. ¶¶ 35-36). At no point does ICS communicate the amount of money collectively needed by the different banks to depositors. (*Id.* ¶ 38).

As stated above, the ICS system provides for certain communications on behalf of relationship banks with depositors through a web interface called the Depositor Control Panel and for certain emails on behalf of relationship banks with depositor alerts. (*Id.* ¶¶ 38-39; Wolfe Decl. ¶¶ 29-34). At no point, however, does the Depositor Control Panel or any such email communicate to any depositor "the amount of money collectively needed by the different commercial banks," or, indeed, any amount of money at all, other than a depositor's own balances. (Powers Decl. ¶¶ 39-40; Wolfe Decl. ¶ 35).

Because Promontory does not communicate the amount of deposits collectively needed by commercial banks to the ICS depositors, and because all of the asserted claims of the '099 patent and the '372 patent require this limitation, Anova cannot show that Promontory's ICS service infringes either of these two patents. Promontory is therefore entitled to summary judgment of noninfringement of the '099 and '372 patents.

**D.     Promontory Is Entitled to Summary Judgment That the Promontory Patents Are Not Invalid Because Anova Cannot Rebut the Statutory Presumption of Validity.**

Anova cannot present evidence to support its vague allegations of invalidity of the Promontory Patents. Therefore, Promontory is entitled to summary judgment on the issue of validity of its patents. "In an infringement action, it is not part of a patent owner's initial burden of going forward with proof of its case to submit evidence supporting validity. Rather, the burden is first on a challenger to introduce evidence which raises the issue of invalidity," which the challenger must meet by "establish[ing] facts, by clear and convincing evidence, which persuasively lead to the conclusion of invalidity." *Avia Group International, Inc., v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1562 (Fed. Cir. 1988).

The only invalidity grounds Anova has identified with any specificity fail because they rely on references that do not qualify as prior art. As noted above, the asserted claims of the Promontory Patents are all entitled to a priority date no later than January 17, 2003, the date when the '128 Application was filed, because all of the Promontory Patents claim priority to the '128 Application on the basis of continuation applications with the same written description. (Israel Decl., Exs. 12-20 at cover pages) The identified art includes ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████ Even on their face, Anova's contentions that these references invalidate the Promontory Patents fail because the references were not filed, published, known, used, or on sale prior to the effective filing date of the Promontory Patents. 35 U.S.C.A. § 102(a), (b) (West 2012); *see Transco Prods. Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 556 (Fed. Cir. 1994) ("The courts have repeatedly recognized [the] principle" that continuation

applications under 35 U.S.C. § 120 "'shall have the same effect' as if filed on the date of the application upon which it claims priority.").

Anova also contends (twice)  (Israel Decl., Ex. 3 at 12-19). This, too, fails on its face. The Promontory Patents are all continuations of the '128 Application. (Israel Decl., Exs. 12, 13 at col. 1:7-14; Exs. 14, 15 at col. 1:11-17; Ex. 16 at col. 1:14-21; Exs. 17, 18, 20 at col. 1:12-19; Ex. 19 at col. 1:10-17).

Anova's contention is essentially that Promontory Patents are prior art to themselves.

Anova's remaining contentions simply recite (Israel Decl., Ex. 3, Anova's First Supplemental Responses to Promontory's First Set of Interrogatories at 12-20).

Not only does Anova rely on vague contentions of invalidity based on , it has failed to present any expert disclosures on the issue of invalidity. For the reasons previously discussed, Anova cannot prove invalidity without

expert testimony, and Anova has no such testimony.   Anova cannot meet its burden to prove

invalidity in this case, and Promontory is therefore entitled to summary judgment that the

Promontory Patents are not invalid.

## IV.    CONCLUSION

For the foregoing reasons, Promontory's motion for partial summary judgment of

noninfringement of the Anova Patents and validity of the Promontory Patents should be granted.


Dated: March 13, 2014                                         Respectfully submitted,


                                                              */s/ Stephen E. Noona*
                                                              Stephen E. Noona
                                                              Virginia State Bar No. 25367
                                                              KAUFMAN & CANOLES, P.C.
                                                              150 W. Main Street, Suite 2100
                                                              Norfolk, VA 23510
                                                              Telephone:  (757) 624.3239
                                                              Facsimile:  (757) 624.3169
                                                              Email:  senoona@kaufcan.com

                                                              Brandon Baum (*pro hac vice*)
                                                              AGILITY IP LAW, LLP
                                                              149 Commonwealth Drive
                                                              Menlo Park, CA  94025
                                                              Telephone:  (650) 318-3476
                                                              Facsimile:  (650) 318-3483
                                                              Email:  Brandon@agilityiplaw.com

                                                              Clifford A. Maier (*pro hac vice*)
                                                              MAYER BROWN LLP
                                                              Two Palo Alto Square, Suite 300
                                                              3000 El Camino Real
                                                              Palo Alto, CA  94306
                                                              Telephone:  (650) 331-2026
                                                              Facsimile:  (656) 331-4526
                                                              Email:  cmaier@mayerbrown.com

                                                              *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2014, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the

following:

Martin M. Zoltick
Virginia State Bar No. 30058
Sharon L. Davis (*pro hac vice*)
Brian S. Rosenbloom
Virginia State Bar No. 47355
ROTHWELL FIGG ERNST & MANBECK, P.C.
607 14th Street, N.W., Suite 800
Washington, DC 20005
Telephone: (202) 783-6040
Facsimile: (202) 783-6031
Email: mzoltick@rfem.com
Email: sdavis@rfem.com
Email: brosenbloom@rfem.com

Robert J. Morris (*pro hac vice*)
SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, LLP
2300 Wells Fargo Capitol Center
150 Fayetteville Street
Raleigh, North Carolina 27601
Telephone: (919) 821-6786
Facsimile: (919) 821-6800
Email: jmorris@smithlaw.com

*Counsel for Defendant*

                                          /s/ Stephen E. Noona
                                          Stephen E. Noona
                                          Virginia State Bar No. 25367
                                          KAUFMAN & CANOLES, P.C.
                                          150 W. Main Street, Suite 2100
                                          Norfolk, VA 23510
                                          Telephone: (757) 624-3239
                                          Facsimile: (757) 624-3169
                                          Email: senoona@kaufcan.com

23